# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **TROY L. BROOKS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION** |
| **v.** ) | |
| ) | **No. 13-1432-KHV** |
| **CAROLYN W. COLVIN,** ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| _____) | |

## MEMORANDUM AND ORDER

Troy L. Brooks appeals the final decision of the Commissioner of Social Security to deny disability insurance benefits under Title II of the Social Security Act ("SSA"), 42 U.S.C. §§ 401 et seq., and supplemental security income ("SSI") under Title XVI of the SSA, 42 U.S.C. §§ 1381 et seq. For reasons set forth below, the Court reverses the decision of the Commissioner and remands the case for further proceedings.

## I.      Procedural Background

On October 28, 2010, plaintiff filed an application with the Social Security Administration for disability insurance benefits and SSI. He alleged a disability onset date of November 30, 2008, at age 20, due to attention deficit hyperactivity disorder ("ADHD"), depression and dyslexia.

The agency denied his application initially and on reconsideration. On June 18, 2012, an administrative law judge ("ALJ") conducted a hearing. See Transcript Of Administrative Record ("Tr.") 31-55. On July 23, 2012, the ALJ concluded that plaintiff was not under a disability as defined in the SSA and that he was not entitled to benefits. Tr. 15-23. On September 16, 2013, the Appeals Council denied plaintiff's request for review. Tr. 1-11. Plaintiff appeals to this Court the final decision of the Commissioner.

## II.     Factual Background

The following is a brief summary of evidence presented to the ALJ.

A.     Medical And Educational Evidence

In March of 2003, a car struck plaintiff as he was riding his bike.  Plaintiff suffered abrasions and contusions, and underwent physical therapy for back pain.

Plaintiff experienced learning difficulties in high school.  Teachers provided him special accommodations including extra time to complete work and placement in a quiet room with minimal distractions.  He completed high school with a "C" average.

On April 29, 2008, Dr. Stanley Mintz, Ph.D., Licensed Clinical Psychologist, evaluated plaintiff.  Tr. 377-81.  Dr. Mintz reported that plaintiff had a full scale IQ of 90.  Dr. Mintz diagnosed plaintiff with attention deficit disorder ("ADD"), learning disability in reading and math and dyslexia.  Dr. Mintz also opined that plaintiff showed symptoms of depression.  He advised plaintiff to avoid work that required math computation or reasoning.  Dr. Mintz indicated that plaintiff had a realistic vocational goal of becoming a barber.

On March 2, 2010, Dr. Melvin Berg, Ph.D. evaluated plaintiff, who reported that he had failed the written test to become a barber because of poor reading skills.  Plaintiff had lapses in attention during testing and scored a full scale IQ of 80.  Dr. Berg diagnosed plaintiff with ADD and depressive disorder.  Dr. Berg opined that plaintiff was best suited for jobs that required nonverbal skills, and that he would likely benefit from psychopharmacological evaluation or assistance from a coach, counselor or therapist to develop strategies to deal with his attention problems.  Tr. 396.

On March 22, 2010, plaintiff 's primary care physician, Dr. Dennis Tietze, started him on Concerta for ADD.  Dr. Tietze noted that even with medication, plaintiff would need help with

organization.  Tr. 405.  On May 3, 2010, Brooks reported that he had stopped taking Concerta

because it gave him fever and chills.  Tr. 406.  Dr. Tietze then prescribed Daytrana.  Tr. 407.

On November 23, 2010, William Moore, LSCSW evaluated plaintiff's mental health.

Plaintiff reported that he was depressed, lacked motivation and was distractible and unable to stay

on task.  Tr. 413.  Moore noted that plaintiff was anxious and exasperated and that his range of affect

was constricted.  Moore assessed plaintiff with ADHD and depressive disorder and a Global

Assessment of Functioning ("GAF") score of 53.[1]  On December 4, 2010, plaintiff began taking

Cymbalta for depression and mood disorder.  Tr. 418.

On December 17, 2010, Dr. Tietze started plaintiff on Singulair for allergies.  Tr. 534.  On

January 26, 2011, a State Agency medical consultant completed a residual functional capacity

assessment and opined that plaintiff should avoid concentrated exposure to fumes, odors, dusts,

gases and poor ventilation.  Tr. 422.

On March 2, 2011, Dr. Robert Barnett, Ph.D., Licensed Clinical Psychologist, evaluated

plaintiff at the request of Disability Determination Services.  Plaintiff earned a full scale IQ of 79,

which is in the borderline range.  Plaintiff reported that he was irritable at times and had difficulty

trusting others.  Dr. Barnett diagnosed plaintiff with a learning disorder which he opined would

interfere with some types of employment, but stated that Brooks could perform simple, repetitive

---

[1]      "The GAF is a subjective determination based on a scale of 100 to 1 of 'the clinician's judgment of the individual's overall level of functioning.'"  Langley v. Barnhart, 373 F.3d 1116, 1123 (10th Cir. 2004) (quoting American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("APA Diagnostic Manual") (4th ed. 2000) at 32).  "A GAF score of 51-60 indicates 'moderate symptoms,' such as a flat affect, or 'moderate difficulty in social or occupational functioning.'" Id. (quoting APA Diagnostic Manual at 34).  "A GAF score of 41-50 indicates '[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning,' such as inability to keep a job.'" Id. (quoting APA Diagnostic Manual at 34).

tasks. Tr. 249.

On June 20, 2011, Linn Suderman, LCPC, M.S., Ph.D. evaluated plaintiff. During testing, Brooks fidgeted, had problems attending to details and concentrating, was impulsive, used his fingers to do math and frequently had difficulty following directions. Tr. 501-02. Dr. Suderman diagnosed plaintiff with ADHD, severe learning disability, reading disorder and dyslexia. She also noted that plaintiff appeared to have anxiety issues, Irlen Syndrome (a perceptual processing disorder) and severe memory and auditory processing issues. Tr. 502-06. Dr. Suderman recommended accommodations including extra time to complete tasks, reduced assignments, assistive technologies for writing and reading, reduction of distractions and presentation of job information in visual or hands-on form. Tr. 512-13.[2]

On June 16, 2012, Dr. Suderman again evaluated plaintiff and diagnosed mathematics disorder, major depressive disorder and chronic post-traumatic stress disorder ("PTSD"), noting that plaintiff experienced anxiety and panic attacks provoked by performance requirements related to educational activities. Dr. Suderman opined that plaintiff had impairments in concentrating, thinking, remembering, learning, reading, math and sleeping. Tr. 684. Dr. Suderman opined that plaintiff would likely find it difficult to continue long term employment. She opined that plaintiff could work as a barber if he passed the exam, but that he would need additional educational supports in order to pass the test. Tr. 686.

_____

[2]      Dr. Suderman also noted that plaintiff might benefit from professional assistance with ADHD and anxiety issues. She also thought that plaintiff should have his hearing tested and an evaluation for possible causes of his poor memory. Tr. 516. Plaintiff reported that he had more difficulty remembering and executing basketball plays and reduced athletic coordination after his bicycle accident in 2003. Tr. 495.

B.      Hearing Testimony

On June 18, 2012, plaintiff testified as follows.

He worked up to 32 hours a week at a grocery store, but had missed eight or nine days in ten months because of back spasms or feeling irritable.  Tr. 38, 45.  He felt that he was unable to work full time because he made too many errors and had difficulty getting along with authority figures. Tr. 40.  He could not learn how to use the hand marker because he could not do the necessary math. He was forgetful and had difficulty paying attention at work.  Tr. 50.  Since his accident in 2003, he had more difficulty with attention, spent less time around people and did not have friends.

He could prepare meals and do household chores including washing dishes and doing laundry.  Tr. 42.  He spent several hours a day watching television or using the computer.  Tr. 41.

C.      Vocational Expert Testimony

The ALJ asked the vocational expert about a hypothetical individual with the following limitations: can perform simple, routine, repetitive tasks and avoid concentrated exposure to extreme pulmonary irritants such as fumes, odors, dusts, gases and poorly ventilated areas.  The vocational expert testified that an individual with such limitations could perform plaintiff's past relevant work as a dining room attendant, as well as work as a printer circuit board trimmer or burring machine operator.  Tr. 53-54.  In response to questioning from plaintiff's attorney, the vocational expert further testified that there would be no competitive employment available to an individual who occasionally was unable to perform simple, routine tasks throughout an eight-hour day due to a tendency to be distracted.  Tr. 54.

D.    ALJ Findings

In her Order of July 23, 2012, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2010.

2. The claimant has engaged in periods of substantial gainful activity since November 30, 2008, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3. The claimant has the following severe impairments: learning disorder, attention deficit disorder and asthma (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525,404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant is limited to simple, routine and repetitive tasks and needs to avoid concentrated exposure to fumes, odors, dust, gases and poor ventilation.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on February 25, 1988 and was 20 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 30, 2008, through the date of this decision (20 CFR 404.1520(g) and 416. 920(g)).

**III.    Standard Of Review**

The Court reviews the Commissioner's decision to determine whether it is "free from legal error and supported by substantial evidence." Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009); see 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Wall, 561 F.3d at 1052; Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). It requires "more than a scintilla, but less than a preponderance." Wall, 561 F.3d at 1052; Lax, 489 F.3d at 1084. Whether the Commissioner's decision is supported by substantial evidence is based on the record taken as a whole. Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994). Evidence is not substantial if it is "overwhelmed by other evidence in the record or constitutes mere conclusion." Grogan v. Barnhart, 399 F.3d 1257, 1261-62 (10th Cir. 2005). To determine if the decision is supported by substantial evidence, the Court will not reweigh the evidence or retry the case, but will examine the record as a whole, including anything that may undercut or detract from the Commissioner's findings. Flaherty v. Astrue, 515 F.3d 1067, 1070 (10th Cir. 2007).

**IV.    Analysis**

Plaintiff bears the burden of proving disability under the SSA. Wall, 561 F.3d at 1062. Plaintiff is under a disability if he has a physical or mental impairment which prevents him from engaging in any substantial gainful activity, and which is expected to result in death or to last for a continuous period of at least 12 months. Thompson v. Sullivan, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423(d)(1)(A)).

-7-

The Commissioner uses a five-step sequential process to evaluate disability. 20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  In the first three steps, the Commissioner determines (1) whether plaintiff has engaged in substantial gainful activity since the alleged onset, (2) whether he has a severe impairment or combination of impairments and (3) whether the severity of any impairment is equivalent to one of the listed impairments that are so severe as to preclude substantial gainful activity.  20 C.F.R. § 404.1520(c), (d); see Williams, 844 F.2d at 750-51.  If plaintiff satisfies steps one, two and three, the Commissioner will automatically find him disabled.  If plaintiff satisfies steps one and two but not three, the analysis proceeds to step four.

At step four, the ALJ must make specific factual findings regarding plaintiff's abilities in three phases.  See Winfrey v. Chater, 92 F.3d 1017, 1023-25 (10th Cir. 1996).  First, the ALJ determines plaintiff's physical and mental residual functioning capacity ("RFC").  Id. at 1023. Second, the ALJ determines the physical and mental demands of plaintiff's past relevant work.  Id. Third, the ALJ determines whether despite the mental and/or physical limitations found in phase one, plaintiff has the ability to meet the job demands found in phase two.  Id.; Henrie v. U.S. Dep't of Health & Human Servs., 13 F.3d 359, 361 (10th Cir. 1993)  If plaintiff satisfies step four, i.e. if plaintiff shows that he is not capable of performing past relevant work, the burden shifts to the Commissioner to establish that plaintiff is capable of performing other work in the national economy.  Williams, 844 F.2d at 750.

Here, the ALJ denied benefits at step five, finding that plaintiff is capable of performing medium unskilled occupations available in the national economy, including printing circuit board trimmer and burring machine operator.  Tr. 22.  Plaintiff argues that the ALJ's RFC determination

-8-

is not supported by substantial evidence because (1) although the ALJ found that plaintiff had a severe impairment of ADD, she did not account for any limitations related to that impairment and (2) the ALJ did not conduct a proper credibility analysis.

Under SSR 96-8p, the ALJ must assess RFC based on all relevant evidence in the record, including information about individual symptoms and any "medical source statements," i.e. opinions by medical sources regarding what plaintiff can do despite his impairments.  SSR 96-8p, 1996 WL 874184, at *7 (July 2, 1996).  In so doing, the ALJ must discuss the following:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).  In assessing RFC, [the ALJ] must discuss [plaintiff's] ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity [plaintiff] can perform based on the evidence available in the case record.  [The ALJ] must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. * * *
>
> The RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, [the ALJ] must explain why the opinion was not adopted.

Id. (footnote omitted).

Here, at step two, the ALJ found that plaintiff had severe impairments including a learning disorder and ADD.  The ALJ then discussed the opinions of examining and treating sources in determining the RFC.  The ALJ stated that "[t]he opinion of Dr. Suderman regarding limitations related to [plaintiff's] *learning disorder* have been taken into consideration in the residual function capacity by limiting him to simple work."  Tr. 20-21. (emphasis added). The ALJ did not address Dr. Suderman's opinion, however, that plaintiff had ADD which required accommodations including reduced distractions.  The ALJ gave significant weight to the opinion of examining source Robert

Barnett, Ph.D., Clinical Psychologist, as a specialist in the field.  The ALJ pointed out that Dr. Barnett stated that plaintiff did not have difficulty with attention or concentration during testing; in fact, Dr. Barnett stated that plaintiff displayed no evidence of ADD during testing.  Tr. 20 (plaintiff was not "distractable, hyperactive or inattentive").  Based on Dr. Barnett's opinion, the ALJ did not specify any limitations in plaintiff's RFC in regard to ADD, even though she had found at step two that plaintiff had a severe impairment of ADD.  See 20 C.F.R. §§ 404.1520(c), 416.920(c) (impairment "severe" if it significantly limits individual's ability to perform basic work activities).  The ALJ did not explain why the RFC did not include any limitation related to plaintiff's ADD; further, she gave significant weight to Dr. Barnett's opinon that plaintiff did not even have ADD.  The ALJ decision thus contains unresolved material inconsistencies and ambiguities.  See Hamby v. Astrue, 260 F. App'x 108, 112 (10th Cir. 2008) (ALJ concluded that claimant had many severe impairments at step two but did not consider consequences of these impairments in determining RFC); Timmons v. Barnhart, 118 F. App'x 349, 353 (10th Cir. 2004) (ALJ should have explained how "severe" impairment at step two became "insignificant" at step five).  The Court therefore must remand the case for further findings.

In reaching this decision, the Court does not mandate a particular result on remand.  Rather, the ALJ should fully explain her reasoning; she must connect plaintiff's severe impairments, including ADD, to limitations in the RFC or explain why the severe impairment of ADD did not result in limitations.  Because the Court must remand on this basis, it does not reach the credibility determination.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is **REVERSED**, and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) **REMANDING** the case for further proceedings consistent with this decision.

Dated this 8th day of September, 2015 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge